1  PAUL L. REIN (Bar No. 43053)
   CELIA MCGUINNESS (Bar No. 159420)
2  LAW OFFICES OF PAUL L. REIN
   200 Lakeside Drive, Suite A
3  Oakland, California  94612
   Telephone:    (510) 832-5001
4  Facsimile:     (510) 823-4787

5  JULIE A. OSTIL (Bar No. 215202)
   LAW OFFICE OF JULIE OSTIL
6  1989 Santa Rita Road, No. A-405
   Pleasanton, California  94566
7  Telephone:    (925) 265-8257
   Facsimile:     (925) 999-9465

8
   Attorneys for Plaintiff MICHAEL PAULICK
9
   JEFFER MANGELS BUTLER & MITCHELL LLP
10 MARTIN H. ORLICK (Bar No. 083908)
   MATTHEW S. KENEFICK (Bar No. 227298)
11 Two Embarcadero Center, Fifth Floor
   San Francisco, California  94111-3824
12 Telephone:    (415) 398-8080
   Facsimile:     (415) 398-5584
13
   Attorneys for Defendants BAVARIAN LION VINEYARD
14 DEVELOPMENT, LLC, DESTINATION HOTELS AND
   RESORTS, LOWE ENTERPRISES, HEIDI SCHNEIDER and
15 SQUAW CREEK ASSOCIATES, LLC

16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                          (OAKLAND DIVISION)

19
   MICHAEL PAULICK,                    |  CASE NO.    3:08-cv-04860-CW
20                                      |
              Plaintiff,                |  **STIPULATION OF THE PARTIES
21                                      |  REGARDING DISMISSAL OF ACTION
        v.                              |  PURSUANT TO TERMS OF SETTLEMENT
22                                      |  AND RETENTION OF JURISDICTION BY
   BAVARIAN LION VINEYARD DEVEL-        |  THE COURT; [~~PROPOSED~~] ORDER
23 OPMENT, LLC; DESTINATION HOTELS      |  THEREON**
   AND RESORTS; LOWE ENTERPRISES;       |
24 RESORT AT SQUAW CREEK; HEIDI         |
   SCHNEIDER; SQUAW CREEK               |  Complaint Filed:      October 23, 2008
25 ASSOCIATES, LLC and DOES 1-20,       |  First Amended
   Inclusive,                           |  Complaint Filed:      December 10, 2010
26                                      |  Trial date:           None Set
              Defendants.               |
27                                      |

28              The parties to this action, Plaintiff Michael Paulick and Defendants Bavarian Lion

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   Vineyard Development, LLC, Destination Hotels and Resorts, Lowe Enterprises, Heidi Schneider
2   and Squaw Creek Associates, LLC, hereby stipulate as follows:

3          This action concerns disabled access claims. The parties have reached a settlement
4   of the claims asserted in this action, including Plaintiff's claims for injunctive relief, statutory
5   damages, and attorney fees, litigation expenses and costs. The parties have memorialized the
6   settlement in a signed Settlement Agreement ("Agreement"), attached hereto as Exhibit A.

7          The parties have redacted from Exhibit A the dollar amounts of the two settlement
8   payments called for in the Agreement -- one for compromise payment in satisfaction of Plaintiffs'
9   claims for damages and the other for compromise payment in satisfaction of Plaintiff's claims for
10  attorneys' fees, litigation expenses and costs. If the court wishes to know the amounts of these
11  settlement payments, the parties will provide that information *in camera*.

12         In the Agreement, in section 8.2, the parties have agreed that any dispute regarding
13  the interpretation, implementation, or enforcement of this Agreement shall be subject to the
14  exclusive jurisdiction of this Court, and Plaintiff and Defendants agree to submit to the exclusive
15  jurisdiction of the Court for these purposes. Section 8.2 further contemplates that the Court shall
16  retain jurisdiction with respect to the interpretation, implementation, and enforcement of this
17  Agreement, whether under General Order 56, or the Court's inherent jurisdiction to administer this
18  Action, until April 30, 2016.

19         The Agreement further provides, in section 5.2(e), that this action shall be dismissed
20  with prejudice, subject to the court's retention of jurisdiction as outlined above.

21         Accordingly, the Parties hereby request that this Court enter an order approving the
22  parties' settlement contained in the Agreement and dismissing the action with prejudice subject to
23  the Court's retention of jurisdiction as set forth in paragraph 3 above.

24
25
26
27
28

1      **IT IS SO STIPULATED.**

2

3    DATED: April 12, 2011         LAW OFFICES OF PAUL L. REIN
                                     PAUL L. REIN

4                                     CELIA McGUINNESS

5

6                                     By: _____
                                     Attorneys for Plaintiff MICHAEL PAULICK

7

8    DATED: April 29, 2011         JEFFER MANGELS BUTLER & MITCHELL LLP
                                     MARTIN H. ORLICK

9                                     MATTHEW S. KENEFICK

10                                   By: _____

11                                          MARTIN H. ORLICK
                                     Attorneys for Defendants BAVARIAN LION

12                                     VINEYARD DEVELOPMENT, LLC,
                                     DESTINATION HOTELS AND RESORTS, LOWE

13                                     ENTERPRISES, HEIDI SCHNEIDER and SQUAW
                                     CREEK ASSOCIATES, LLC

14

15

16                          **[~~PROPOSED~~] ORDER**

17        Pursuant to Federal Rules of Civil Procedure, Rule 26 (c), and by agreement of

18   counsel hereto based on the terms of the above stipulation, **IT IS HEREBY ORDERED AND**

19   **ADJUDGED** that the settlement of the parties set forth in the Agreement is approved and that this

20   action is hereby dismissed with prejudice as to all defendants, subject to the parties' agreement to

21   submit to the exclusive jurisdiction of the Court with respect to disputes regarding the

22   interpretation, implementation, or enforcement of the Agreement and the retention of jurisdiction by

23   this Court until April 30, 2016 for that purpose.

24        **FOR GOOD CAUSE APPEARING, IT IS SO ORDERED:**

25   DATED: ~~April~~ , ~~2011~~.       _____
          **May 5, 2011.**

26                                         CLAUDIA WILKEN
                                      JUDGE OF U.S. DISTRICT COURT

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is hereby entered on April 8, 2011.

### SECTION 1 - PARTIES

The parties to this Agreement are Michael Paulick ("Plaintiff"), on the one hand, and the Defendants named as Bavarian Lion Vineyard Development, LLC ("Bavarian Lion"); Destination Hotels and Resorts ("Destination"); Lowe Enterprises, Inc., ("Lowe"); Heidi Schneider, an individual ("Schneider") and Squaw Creek Associates, LLC ("SCA"), on the other hand. Plaintiff and Defendants shall be referred to as a "Party" individually and "Parties" collectively. SCA, Bavarian Lion, Destination, Lowe, and Schneider are sometimes referred to herein collectively as "Defendants."

### SECTION 2 - RECITALS

2.1     Plaintiff, Michael Paulick, filed a Complaint in the United States District Court for the Northern District of California (the "Court"), Action No. C08-04860 CW, entitled <u>Michael Paulick vs. Bavarian Lion Vineyard Development, LLC; Destination Hotels and Resorts; Lowe Enterprises; Resort at Squaw Creek; Heidi Schneider and Does 1-20, inclusive</u> (the "Complaint"), on October 23, 2008, to obtain recovery of damages for his alleged discriminatory experiences, denial of access, and denial of his civil rights, and to enforce certain provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. sections 12101, et seq., and California civil rights laws against Bavarian Lion, Destination, Lowe, Schneider and The Resort at Squaw Creek, relating to the condition of The Resort at Squaw Creek, 400 Squaw Creek Road, Olympic Valley, California (the "Resort"), as of May 15, 2007. On December 12, 2010, Plaintiff filed an Amended Complaint adding SCA as a defendant (the "Amended Complaint"). Plaintiff's Complaint and First Amended Complaint shall be referred to as the "Action."

2.2     Defendants, and each of them, deny each and every allegation contained in, or which could have been contained within, the Action. Defendants, and each of them, further deny that they breached any obligation to, or committed any wrongdoing against Plaintiff, and deny any and all claims of wrongdoing and fault. Specifically, Defendants deny that they have violated or failed to comply with any provisions of the ADA, Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), any applicable laws of the State of California, or any other statute related to accessibility for persons with disabilities to public accommodations, any regulations or guidelines promulgated pursuant to those statutes, or any other applicable laws, regulations, or legal requirements. SCA contends that because it does not own all the guest rooms at the Resort, it cannot compel the owners of accessible guest rooms (as defined below) to participate in the Resort's rental program, and that the voluntary assent of individual owners is needed to convert guest rooms to accessible guest rooms and/or to add accessible guest rooms to the Resort's rental program. Plaintiff disputes these contentions.

1

## SECTION 3 - PURPOSE OF AGREEMENT

3.1   This Agreement shall be a full, complete, and final disposition and settlement of any and all claims against Defendants, and each of them, that were asserted, or could have been asserted in the Action.

3.2   The Parties to this Agreement desire to resolve the claims that have been asserted in the Action, or could have been asserted in the Action, in order to avoid the costs, expense and uncertainty of protracted litigation. This Agreement does not constitute an admission on the part of any Party by negotiating, entering into, or performing any obligation under this Agreement.

### AGREEMENT

In consideration of the mutual promises and performance hereinafter described, the Parties agree as follows:

### SECTION 4 - MUTUAL RELEASE AND SECTION 1542 WAIVER

4.1   Incorporation of Recitals and Purpose of Agreement.  The foregoing Recitals and Purpose of Agreement are incorporated herein as if stated in full and are deemed to be true and correct.

4.2   Complete Release of Claims.

a.   Plaintiff, individually and on behalf of his agents, representatives, assignees, attorneys, heirs, administrators, beneficiaries, and executors, for and in consideration of the covenants set forth hereby, fully and unconditionally releases and forever discharges Defendants, and each of them, and their respective agents, employees, representatives, owners, officers, directors, shareholders, members, managers, attorneys, successors and assigns from any and all claims, demands, actions, causes of action, obligations, liabilities, and attorney's fees of every kind, nature and description, known or unknown, fixed or contingent, and whether based on contract, tort, statutory or other legal or equitable theory of recovery, regarding any provision of the ADA, the ADAAG, any other statute related to accessibility for persons with disabilities, any regulations or guidelines promulgated pursuant to those statutes, or any other applicable laws, regulations, or legal requirements, which Plaintiff has, may have, or had against the Defendants, and each of them, at any time prior to the Effective Date of this Agreement, including the claims asserted in the Action (the "Released Claims").

b.   Defendants, individually and on behalf of their agents, employees, representatives, owners, officers, directors, shareholders, members, managers, attorneys, successors and assigns, for and in consideration of the covenants set forth hereby, fully and unconditionally release and forever discharge Plaintiff, and his attorneys, heirs, administrators, beneficiaries, executors, agents, representatives, and assigns from any and all claims, demands, actions, causes of action, obligations, liabilities, and attorney's fees of every kind, nature and description, known or unknown, fixed or contingent, and whether based on contract, tort, statutory or other legal or equitable theory of recovery, regarding any provision of the ADA, the ADAAG, any other statute related to accessibility for persons with disabilities, any regulations or

guidelines promulgated pursuant to those statutes, or any other applicable laws, regulations, or legal requirements, which Defendants have, may have, or had against Plaintiff, at any time prior to the Effective Date of this Agreement, including the claims asserted in the Action.

4.3     Remedial Measures.  Plaintiff agrees that the remedial measures set forth in Attachments A through E hereto shall be the exclusive remedial measures required under this Agreement.  Plaintiff expressly waives any claims for remedial measures at the Resort beyond those contained in this Agreement, except for access barriers that are created after the date of this Agreement.

4.4     Claims in Breach of Agreement.  This Agreement may be pleaded as a full and complete defense and bar to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which Plaintiff may commence, initiate, institute, prosecute, maintain or otherwise threaten or attempt in breach or violation of the provisions of this Agreement.

4.5     Civil Code Section 1542 Waiver.  The Parties acknowledge that there is a risk that, subsequent to the execution of this Agreement, they may incur, suffer or sustain injury, loss, damage, costs, attorneys' fees, expenses, or any of these, which are in some way caused by and/or connected with the Released Claims, which are unknown and unanticipated at the time that this Agreement is signed, or which are not presently capable of being ascertained. The Parties further acknowledge that there is a risk that such damages as are known may become more serious than they now expect or anticipate. Nevertheless, the Parties acknowledge that this Agreement and the release set forth in Section 4.2 herein, have been negotiated and agreed upon in light of those risks and hereby expressly waive all rights they may have in any such unknown claims and assume the risk that the facts and law pertaining to this dispute may change or be different than is now known.  The Parties hereby assume the above-mentioned risks and hereby expressly waive any rights or benefits with respect to such unknown claims available under Section 1542 of the Civil Code of the State of California which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties acknowledge that the effect and import of the provisions of Section 1542 have been explained to them by their own independent counsel or that such independent counsel was available to each of them prior to their execution of this Agreement. The Parties further acknowledge that this waiver of rights under Section 1542 of the Civil Code has been separately bargained for and is an essential and material term of this Agreement and that, without this waiver, the Parties would not have entered into this Agreement.

## SECTION 5 - REMEDIATION, COMPENSATION AND DISMISSAL

5.1     Remediation.

a.      The Parties agree and stipulate that any remedial measures to be performed under this Agreement ("Remediation") will be performed by SCA, in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and the current version of the ADAAG. Bavarian Lion, Schneider, Lowe, and Destination shall not have any obligation to perform any Remediation under this Agreement. SCA's obligations to perform the Remediation shall continue according to the procedures and timeline established in this Agreement for so long as SCA owns the Resort. If SCA ceases to own the Resort due to sale, foreclosure, or otherwise, SCA's obligations to perform the Remediation set forth in this Agreement shall terminate, and the Remediation provisions of this Agreement shall be binding on the new owner of the Resort. Prior to the closing of the ownership transfer, SCA shall provide the new owner of the Resort with a copy of this Agreement.

b.      The scope of the Remediation agreed upon by the Parties with respect to the common areas of the Resort is detailed in the list of remedial measures attached hereto as Attachment "A". The scope of the Remediation agreed upon by the Parties with respect to the guest rooms of the Resort is detailed in Attachment "B" hereto.

c.      SCA agrees to institute written policies in order to train Resort staff who perform the services as delineated in Attachment "C" hereto.

5.2     Timing of Remediation. SCA shall perform the Remediation on the following schedule:

a.      Remediation Requiring Construction Permits. For the Remediation described in Attachment "A" and Attachment "B" that requires construction permits, subject to any unforeseeable delay, SCA shall perform that Remediation on the following schedule:

(i)     The pool lift was installed on or before August 31, 2010;

(ii)    The sinks in the public restrooms will be remediated no later than July 30, 2011;

(iii)   The accessible parking spaces at the island adjacent to the porte-cochère, as identified in Attachment "D" hereto, will be completed no later than November 31, 2011;

(iv)    The pool access ramp will be completed no later than November 31, 2011;

(v)     The accessible parking lot slope and cross-slopes will be remediated no later than April 30, 2012.

b.      <u>Remaining Remediation</u>.  For the remaining Remediation described in <u>Attachment</u> "A" that does not require construction permits, subject to any unforeseeable delay, SCA shall perform that Remediation no later than April 30, 2012.

c.      SCA will notify Plaintiff when the Remediation is completed, and in any case will provide a status report no later than October 31, 2011.  In the event that an unforeseen delay prevents completion of any of the agreed-upon Remediation within the foregoing timeline, SCA will notify Plaintiff in writing within 30 days after SCA management learns of the delay. Within thirty (30) days of this notice, the Parties will meet and confer to agree upon a reasonable time frame to complete the Remediation.  If the Parties cannot agree on the time frame for the Remediation, Plaintiff may enact the provisions set forth in Section 6.1 below.  If the Parties agree upon the time frame for the Remediation, SCA will then have the agreed upon time frame to complete the Remediation, subject to all notice and opportunity to cure provisions set forth in Section 6.1 below.



**BALANCE OF SECTION 5.2 AND SECTION 5.3 INTENTIONALLY REDACTED**

## SECTION 6 - NOTICE AND OPPORTUNITY TO CURE

6.1     Notice and Opportunity to Cure for Alleged Breach of This Agreement. If at any time Plaintiff contends that the Defendants, or any or them, are not in compliance with their obligations under this Agreement, Plaintiff or his counsel shall promptly notify Defendants in writing, by first class U.S. mail and facsimile, of the specific perceived non-compliance as verified by Plaintiff and give Defendants a sufficient opportunity to cure any alleged deficiencies. Such notice (the "Notice of Non-Compliance") shall be sent to Defendant as follows:

> Mr. Roger Beck
> Managing Director
> Resort at Squaw Creek
> 400 Squaw Creek Road
> Olympic Valley, CA 96146

> and

> John M. DeMarco, Esq.
> Sr. Vice President and Corporate Counsel
> Lowe Enterprises, Inc., and Subsidiaries
> 11777 San Vicente Blvd., Suite 900
> Los Angeles, CA 90049
> Fax No. (310) 820-8131

> With a copy of the notice sent to:
> Martin H. Orlick, Esq.
> Jeffer Mangels Butler & Mitchell LLP
> Two Embarcadero Center, 5th Floor
> San Francisco, CA 94111
> Fax No.: (415) 398-5584

The Parties shall be allowed sixty (60) days from the date of receipt of Plaintiff's Notice of Non-Compliance to meet and confer regarding any alleged deficiencies, non-compliance with disabled access laws, or discrimination (the "Initial Conference"). Within thirty (30) days from receipt of Plaintiff's written Notice of Non-Compliance, Defendants shall acknowledge, in writing, receipt of said Notice. After the Initial Conference, the Parties shall have an additional thirty (30) days to agree upon what measures (if any) are needed to bring Defendants in compliance with their obligations under this Agreement and a reasonable time frame to carry out such measures (the "Cure Period"). If the Parties reach agreement, Defendants will then have the Cure Period to complete the agreed-upon measures, subject to all notice and opportunity to cure provisions set forth in this Section.

Written Notice of Non-Compliance to Defendants as provided above, the Initial Conference and the Cure Period described above shall be prerequisites to any action, suit, or other proceeding which Plaintiff may commence, initiate, institute, prosecute, maintain or

otherwise threaten or attempt with respect to any claims that Defendant, or any of them, have breached this Agreement.

## SECTION 7 - WARRANTIES

7.1     Authority.  The Parties represent and warrant that they have the full power, capacity, and authority to enter into this Agreement, and no claim, right, demand, action, or cause of action, relating to the Action was assigned to any person who, or entity which, is not a Party to this Agreement.

7.2     Binding Effect of Agreement.  The Parties agree that if the facts upon which this Agreement is based are found to be different from the facts they now believe to be true, this Agreement will nevertheless remain binding and fully effective.

7.3     No Admission.  This Agreement is the compromise of disputed claims and is intended to buy peace and to prevent any further involvement in the Action.  Neither the Remediation, nor the Settlement Payment, nor anything else contained in this Agreement shall be interpreted or construed to be an admission on the part of, nor to the prejudice of, any person or Party named herein, and each such Party or person hereto expressly denies any and all liabilities associated with or related to the Action and the claims described therein.

7.4     Voluntary Action.  Each Party enters into this Agreement knowingly and voluntarily.  Each Party declares and represents that no promise, inducement or other agreement not expressly contained herein has been made concerning the subject matter of this Agreement and that this Agreement contains the entire agreement between Plaintiff and Defendants.

7.5     Representation.  Each Party represents and acknowledges that each of them has been represented by independent counsel with respect to this Agreement and all matters covered by or related to this Agreement.  Each Party has been fully advised with respect to all rights which are affected by this Agreement, and each Party has authorized and directed their respective attorneys to execute and deliver such other and further documents as may be required to carry out the terms of this Agreement.

7.6     Other Costs and Attorneys' Fees.  Plaintiff warrants and represents that no person, other than Plaintiff and his counsel, is entitled to the Settlement Payment or any portion thereof, and Plaintiff will indemnify Defendants for their damages, reasonable attorneys' fees, litigation costs, and expenses should any such claims be made as to the Settlement Payment.

## SECTION 8 - GENERAL PROVISIONS

8.1     Effectiveness of this Agreement;.  The "Effective Date" of this Agreement shall be the date when this Agreement has been signed by all Parties.

8.2     Jurisdiction of the Court.  Any dispute regarding the interpretation, implementation, or enforcement of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court, Northern District of California, and Plaintiff and Defendant agree to submit to the exclusive jurisdiction of the Court for these purposes.  The Court shall

retain jurisdiction with respect to the interpretation, implementation, and enforcement of this Agreement, whether under General Order 56, or the Court's inherent jurisdiction to administer this Action, until April 30, 2016, as set forth in the Stipulation/Proposed Order, Exhibit F.

8.3    Entire Agreement. This Agreement constitutes the entire agreement between the Parties hereto with respect to all of the matters discussed herein, and supersedes all prior, contemporaneous discussions, communications, or agreements, expressed or implied, written or oral, by or between the Parties. This Agreement may not be altered, amended, or modified in any respect, except by a writing duly executed by the Party to be charged.

8.4    Governing Law. This Agreement shall be interpreted and governed according to the laws of the State of California.

8.5    Publicity. Plaintiff and his counsel agree that they shall not issue and shall not cause any other person or entity to issue any press releases, or participate in any press conference relating to the settlement contemplated by this Agreement.

8.6    Non-Disparagement. The Parties represent that neither they nor their counsel intend to make any disparaging comments and/or statements about the other Parties.

8.7    Cooperation. Each Party, without further consideration, and upon request of the other Party, agrees to execute and deliver such other documents and to take such other action as may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement. The duty to cooperate includes, but is not limited to, preparing, executing and filing any and all documents necessary to effect the dismissal of the Action with prejudice as contemplated hereby.

8.8    Number and Gender. Paragraph headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Agreement. As used in this Agreement, the singular shall include the plural and the masculine shall include the feminine and neuter genders.

8.9    Construction. This Agreement is the product of negotiations and shall not be construed against the Party preparing it, but shall be construed as if all Parties jointly prepared this Agreement without any uncertainty or ambiguity being interpreted against any one Party.

8.10    Counterparts and Delivery of Signatures by Facsimile or PDF. This Agreement may be executed in counterparts, which, when counterparts have been executed by all of the Parties, shall constitute this Agreement. This Agreement may also be signed and delivered via facsimile transmission, or electronically via PDF and such facsimile or PDF documents shall be deemed originals and binding upon the signatories upon receipt by the Party to whom the facsimile or other electronic transmission is sent. The "hard copies" of such documents bearing the original signatures of such signatories shall be sent via first class mail on the same day as the facsimile or other electronic transmission.

IN WITNESS THEREOF, the Parties have executed this Agreement as of the date specified below.

**PLAINTIFF**

Dated:  April 12, 2011                    By: _Michael Paulick_
                                             MICHAEL PAULICK, an individual

**APPROVED AS TO FORM AND CONTENT:**

PAUL L. REIN
CELIA McGUINNESS
LAW OFFICES OF PAUL L. REIN

By: _Paul L. Rein_                        Dated:  April 12, 2011
    PAUL L. REIN, Attorneys for Plaintiff,
    MICHAEL PAULICK, an individual

**DEFENDANTS**

                                          BAVARIAN LION VINEYARD
                                          DEVELOPMENT, LLC

Dated:  April ___, 2011
                                          By:_____
                                          Print Name:_____
                                          Its:_____
                                          Print Title:_____

                                          SQUAW CREEK ASSOCIATES, LLC,

Dated:  April ___, 2011
                                          By:_____
                                          Print Name:_____
                                          Its:_____
                                          Print Title:_____

                                          DESTINATION HOTELS AND RESORTS

Dated:  April ___, 2011
                                          By:_____
                                          Print Name:_____
                                          Its:_____
                                          Print Title:_____

Dated:  April ___, 2011                   LOWE ENTERPRISES, INC.

                                          By:_____
                                          Print Name:_____
                                          Its:_____
                                          Print Title:_____

IN WITNESS THEREOF, the Parties have executed this Agreement as of the date specified below.

**PLAINTIFF**

Dated: April ___, 2011

By: _____
MICHAEL PAULICK, an individual

**APPROVED AS TO FORM AND CONTENT:**

PAUL L. REIN
CELIA McGUINNESS
LAW OFFICES OF PAUL L. REIN

By: _____
PAUL L. REIN, Attorneys for Plaintiff,
MICHAEL PAULICK, an individual

Dated: April ___, 2011

**DEFENDANTS**

BAVARIAN LION VINEYARD
DEVELOPMENT, LLC

Dated: April 12, 2011

By: _____
Print Name: PIERRE EHRET
Its: Gen Partner
Print Title: _____

SQUAW CREEK ASSOCIATES, LLC,

Dated: April ___, 2011

By: _____
Print Name: _____
Its: _____
Print Title: _____

DESTINATION HOTELS AND RESORTS

Dated: April ___, 2011

By: _____
Print Name: _____
Its: _____
Print Title: _____

Dated: April ___, 2011

LOWE ENTERPRISES, INC.

By: _____
Print Name: _____
Its: _____
Print Title: _____

OMS WEST:261f26400.1

9

IN WITNESS THEREOF, the Parties have executed this Agreement as of the date specified below.

**PLAINTIFF**

Dated: April ___, 2011                    By:_____
                                               MICHAEL PAULICK, an individual

**APPROVED AS TO FORM AND CONTENT:**

PAUL L. REIN
CELIA McGUINNESS
LAW OFFICES OF PAUL L. REIN

By:_____              Dated: April ___, 2011
     PAUL L. REIN, Attorneys for Plaintiff,
     MICHAEL PAULICK, an individual

**DEFENDANTS**                            BAVARIAN LION VINEYARD
                                          DEVELOPMENT, LLC

Dated: April ___, 2011                    By:_____
                                          Print Name:_____
                                          Its:_____
                                          Print Title:_____

                                          SQUAW CREEK ASSOCIATES, LLC,
                                          By:  Destination Tahoe Investors, LLC
                                               its Administrative Member

Dated: April ___, 2011                    By:_____
                                          Print Name: _Charles S. Peck_
                                          Its:_ President_
                                          Print Title:_____

                                          DESTINATION HOTELS AND RESORTS

Dated: April ___, 2011                    By:_____
                                          Print Name: _Charles S. Peck_
                                          Its:_ President_
                                          Print Title:_____

Dated: April ___, 2011                    LOWE ENTERPRISES, INC.

                                          By:_____
                                          Print Name  _John M. DeMarco_
                                          Its:_ Sr. Vice President_
                                          Print Title:_____

Dated: April 12, 2011

By: _____
    HEIDI SCHNEIDER, an Individual

APPROVED AS TO FORM AND CONTENT:

By: _____        Date: April ___, 2011
    ~~MARTIN H. ORLICK, ESQ., Jeffer Mangels~~
    Butler & Mitchell LLP, Attorneys for
    Defendants BAVARIAN LION VINEYARD
    DEVELOPMENT, LLC, SQUAW CREEK
    ASSOCIATES, LLC,, DESTINATION
    HOTELS AND RESORTS, LOWE
    ENTERPRISES, INC., RESORT AT SQUAW
    CREEK, HEIDI SCHNEIDER

~~property name~~   NHD 4/13/11

Dated: April ___, 2011

By:_____
      HEIDI SCHNEIDER, an Individual

APPROVED AS TO FORM AND CONTENT:

By:_____

MARTIN H. ORLICK, ESQ., Jeffer Mangels
Butler & Mitchell LLP, Attorneys for
Defendants BAVARIAN LION VINEYARD
DEVELOPMENT, LLC, SQUAW CREEK
ASSOCIATES, LLC,, DESTINATION
HOTELS AND RESORTS, LOWE
ENTERPRISES, INC., RESORT AT SQUAW
CREEK, HEIDI SCHNEIDER

Date: April 13, 2011

## ATTACHMENT A:  REMEDIATION IN COMMON AREAS

I.    PATHS OF TRAVEL:

    A.    Provide wheel guards at the front of the designated accessible parking spaces so that when a vehicle is parked at the very front of the space its front bumper will not reduce the width of the striped walk in front of the parking spaces.

    B.    The West sidewalk from the parking lot shall be a designated path of travel from the parking lot to the lobby.  The accessible parking spots in the eastern parking lot will be abandoned and three accessible parking spaces, including one van-accessible space, shall be constructed at the porte-cochère.  The slope and cross-slope of the western, accessible path or travel shall not exceed 2.25%, except at curb ramps.  Curb ramps shall meet all code requirements.  See Attachment "D" hereto.

    C.    On the south side of Sandy's Pub, provide a push plate on the push side of the gate that is a smooth uninterrupted surface extending a minimum of 10" above the finished surface.

    D.    On the south side of Sandy's Pub, reconfigure the clear floor space in the required landing for the gate to provide a fully complying landing on the swing side of the gate, which is a minimum of 60" measured perpendicular to the face of the closed gate and extends beyond the strike edge of the gate a minimum of 24".

    E.    On the ramp to the west side of the pool, Defendants will either:

        1.    Replace or modify the ramp to be fully compliant, including

            a.    a 48" minimum width;

            b.    a maximum slope of 8.33%;

            c.    handrails on both sides mounted at a height ranging between 34"and 38"above the finished ramp surface, continuous along the full length of the ramp runs and extending a minimum of 12" beyond the top and bottom of each ramp run and 1-1/4 to 1-1/2" in diameter;

            d.    A level landing every 30' of rise greater than 5%;

            e.    a level landing at a change of direction and at the top and bottom of each ramp run;

            f.    intermediate landings shall be a minimum of 5'long in the direction of travel;

g.  Raised edge protection along both sides of the ramp that project at least 3" above the surrounding surface, or install a bottom rail of the handrails which shall provide bottom edge protection.

OR in the alternative:

2.  In any part of the path of travel which exceeds 5%, defendants may create a designated accessible path of travel bypassing the areas of either change the grade or slope, wherein the slopes will not exceed 5% in run slope and 2% in cross-slope.  Signage will be provided to indicate the designated accessible path of travel.

## II.  PARKING:

A.  Provide a sign at each entrance to the western parking lot, or at the end of each designated accessible parking space, which informs individuals that parking illegally in designated accessible parking spaces may result in having their vehicle towed.  In addition, the sign must give individuals the location and phone number where their towed vehicles may be retrieved.

B.  Provide eight (8) fully compliant accessible parking spaces including two (2) van-accessible parking spaces on the site, distributed among the western parking lot and the center island across from the porte-cochère.

C.  Defendants will place a sign in each designated accessible parking area offering complimentary valet service and luggage assistance for disabled guests.

D.  Each designated accessible parking place shall meet all code requirements.

## III.  FACILITIES ON THE SITE:

A.  Provide a single portable or permanent lift to service both the swimming pool and one Jacuzzi closest to the swimming pool.

B.  At the Pool Area Bar, provide a lower section of counter that has a maximum height of 34" above the finished floor and a minimum length of 36".

C.  At the Pool Area Bar, provide a minimum of 5% of the accessible seating for persons in wheelchairs at fixed tables

D.  Move trash can away from emergency phones at a distance of 30".

## IV.  PUBLIC AMENITIES BUILDING - MAIN LEVEL:

A.  Adjust or replace the door closers to the Conference Center, Grand Sierra Ballrooms A-D, exterior balcony to the Conference Center, and Six Peaks restaurants so the maximum force required to open the doors is 5 pounds of pressure.

B.    At the Front Desk in Lobby:

    1.    Provide a lower section of counter that has a maximum height of 34" above the finished floor and a minimum length of 36";

    2.    Lower the height of the computer keyboard and printer so the top surface that a guest is required to reach across to operate the device is set at a maximum height of 34" above the finished floor.

C.    At the Bell Hop Desk in Lobby, place an ISA sign offering assistance for disabled persons.

D.    At the Six Peaks Restaurant:

    1.    Provide a lower section of bar that has a maximum height of 34" above the finished floor and a minimum length of 36".

    2.    Provide fully compliant handrails on both sides of the stairs;

    3. ·    Provide a minimum of 5% of the seating for persons in wheelchairs at tables, where the knee space provided underneath the fixture is at least 27" high, 30" wide and 19" deep.

E.    At the Sweet Potatoes Deli:

    1.    Provide a lower section of the register counter that has a maximum height of 34" above the finished floor and a minimum length of 36".

    2.    Deli Counter:  Provide a sign having ISA symbol and stating that table service will be provided for persons with disabilities upon request.

    3.    Provide a lower condiment counter that has a maximum height of 34" above the finished floor.

    4.    Lower the microwave so the highest operable part is set at a maximum height of 54" above the finished floor.

    5.    Provide a minimum of 5% of the seating for persons in wheelchairs at tables, where the knee space provided underneath the fixture is at least 27" high, 30" wide and 19" deep.

V.    PUBLIC AMENITIES, BUILDING – Lower Level:

A.    At the Cascades Restaurant:

    1.    If used, provide compliant buffet tables.

2.   Remove or modify the ramp to provide a 48" minimum width, a maximum slope of 8.33%, handrails on both sides, a level landing every 30" of rise, at a change of direction and at the top and bottom of each ramp run.

3.   Provide a 48" minimum wide path of travel onto the dance floor.

4.   Adjust or replace the door closers on all doors so the maximum force required to open the doors is 5 pounds of pressure.

B.   Ristorante Montagna:

1.   Adjust or replace the door closers so the maximum force required to open the doors is 5 pounds of pressure.

2.   Provide a push plate on the push side of the door that is a smooth uninterrupted surface extending a minimum of 10" above the finished surface.

3.   Provide a minimum of 5% of the seating for persons in wheelchairs at tables, where the knee space provided underneath the fixture is at least 27" high, 30" wide and 19" deep.

4.   At the wheelchair lift , reconfigure the junction between the end of the wheelchair lift and the finished surface of the building floor, so the gap between these two elements is a maximum of ½" wide.

5.   At the bar, provide ISA signage indicating table service will be provided upon request to persons with disabilities.

VI.   PUBLIC AMENITIES BUILDING – Lower Level Two

A.   Sandy's Pub:

1.   At the exterior doors adjacent to interior entrance to restaurant, adjust or replace the door closers so the maximum force required to open the doors is 5 pounds of pressure.

2.   Reconfigure the Bar so that kneespace underneath the lower section of the bar counter extends a minimum of 19" back from the front face of the counter.

3.   Provide a minimum of 5% of the seating for persons in wheelchairs at tables, where the knee space provided underneath the fixture is at least 27" high, 30" wide and 19" deep.

B.   At the fire pit located near Sandy's Pub:

    1.     Remediate according to the drawings of Larry Woods, attached and incorporated herein as Attachment "E".

    2.     Provide a companion seat in the wheelchair area at all times when the fire pit is used by the public.

    3.     Affix a sign in the wheelchair area stating that priority for the chair will be given to companions of disabled persons.

C.    Fitness Center:

    1.     Adjust or replace the door closers so the maximum force required to open the doors is 5 pounds of pressure.

    2.     At the exterior doors, reconfigure this threshold so the height of the top of this element is a maximum of ½" above the finished surface on each side of the door, by either replacing the threshold or raising the height of the finished surface on either side of the door as necessary to bring it into compliance with the code.

    3.     At the exterior doors, either remove the existing doormat or firmly attach it to the surface so it cannot be easily moved or raised up or buckle as a wheelchair or other mobility assistive device crosses over it.

VII.    DRINKING FOUNTAIN: Provide one fully compliant high/low type drinking fountain on the main lobby level floor, near the Men's Restroom, or remove this drinking fountain.

VIII.    RESTROOMS AND LOCKER ROOM

A.    Men's restroom at the swimming pool:

    1.     Either replace the threshold or raise the finished surface on the exterior side of the doorway so the door landing on the exterior side of the door, so the top of the threshold is set within ½" of the finished surface on both sides of the closed door.

    2.     Adjust or replace the existing door closer so the maximum pressure required to open the door is 5 pounds of pressure.

    3.     Relocate the towel dispenser so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the highest operable mechanism.

    4.     Provide a compliant mat with beveled edge which raises the floor level to place the urinal rim edge no higher than 17" above the finished floor.

    5.     Remount the toilet grab bar so that the face of the adjacent wall and the interior face of the grab bar is exactly 1-1/2".

6. Relocate the sanitary seat cover dispenser so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the highest operable mechanism.

B. Men's restroom entry door near the Sierra Grand Ballroom C:

1. Adjust or replace the existing door closer so the maximum pressure required to open the door is 5 pounds of pressure.

2. Reconfigure the clear floor space for this entry condition to provide a fully complying door landing on the swing side of the door, which extends a minimum of 60" measured perpendicular from the face of the closed door and extends a minimum of 18" beyond the strike edge of the door, by installing a café hinge on door or any other alternative method of obtaining the clear space.

3. Remediate one sink to meet all code requirements, including but not limited to knee space and p-trap placement. Place an ISA sign at the accessible sink.

4. Reconfigure the clear floor space in the required landing for the accessible stall door to provide a fully complying door landing on the swing side of the door, which is a minimum of 60" measured perpendicular to the face of the closed door and extends beyond the strike edge of the door a minimum of 18" from the nearest obstruction. This may be done by installing a stall door that swings in both directions or any other compliant modification.

5. Remount the grab bar in the accessible toilet stall so that the face of the adjacent wall and the interior face of the grab bar is exactly 1-1/2".

C. Men's restroom on the first floor near the lobby:

1. Remediate one sink to meet all code requirements, including but not limited to knee space and p-trap placement. Place an ISA sign at the accessible sink.

2. Relocate the mirror so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center to the highest operable mechanism.

D. Men's restrooms near the Papoose Peak Conference Room:

1. Adjust or replace the existing door closer so the maximum pressure required to open the door is 5 pounds of pressure.

2. Reconfigure the clear floor space in the required landing for the stall door to provide a fully complying door landing on the swing side of the door,

which is a minimum of 60" measured perpendicular to the face of the closed door and extends beyond the strike edge of the door a minimum of 18" from the nearest obstruction. To accomplish this, defendant will make the door swing in, install a 2-way hinge or any other compliant modification.

3.   Relocate or add a toilet paper dispenser so it is mounted underneath the grab bar at a maximum distance of 12" on center in front of the toilet and at a minimum height of 19" above the finished floor.

4.   Remount the grab bar so that the face of the adjacent wall and the interior face of the grab bar is exactly 1-1/2".

E.   Men's restroom near Sandy's Pub:

1.   Adjust or replace the existing door closer so the maximum pressure required to open the door is 5 pounds of pressure.

2.   Reconfigure the clear floor space to provide a fully complying door landing on the swing side of the door, by changing the door to swing out or installing café hinges or other compliant modification.

3.   Move the changing table to configure the clear floor space for this entry condition to provide a fully complying door landing on the swing side of the door, which is level within 2% in any direction, extends a minimum of 60" measured perpendicular from the face of the closed door and extends a minimum of 18" beyond the strike edge of the door.

4.   Relocate the mirror so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center to the highest operable mechanism.

5.   Remount the grab bar so that the face of the adjacent wall and the interior face of the grab bar is exactly 1-1/2".

6.   Relocate the sanitary seat cover dispenser so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 40" on center, to the highest operable mechanism.

F.   Men's restroom near Ristorante Montagna:

1.   Adjust or replace the existing door closer so the maximum pressure required to open the door is 5 pounds of pressure.

2.   Remediate one sink to meet all code requirements, including but not limited to knee space and p-trap placement. Place an ISA sign at the accessible sink.

3.    Install a larger drain cover so the maximum floor slope in any direction is 2.0%.

G.    Locker Room in the Fitness Center:

1.    Adjust or replace the existing door closer so the maximum pressure required to open the door is 5 pounds of pressure.

2.    Remediate one sink to meet all code requirements, including but not limited to knee space and p-trap placement. Place an ISA sign at the accessible sink.

3.    Reconfigure the clear floor space for the door to the lavatory to provide a fully complying door landing on the swing side of the door, which extends a minimum of 60", measured perpendicular to the face of the closed door, has a clear area that extends a minimum of 18" beyond the strike edge of the door and does not swing into the 48" long clear floor area that is required in front of the toilet. To accomplish this, defendant will make the door swing in, or install a 2-way hinge or other compliant modification.

4.    Reconfigure stall wall or move the toilet so the toilet is exactly 18" on center from the adjacent wall.

5.    Reconfigure the bathroom so the minimum distance between the side of the toilet and the face of the sink or any other obstruction is 32" clear.

6.    Relocate the coat hook so it is adjacent to a 30" by 48" clear floor ground space and is mounted no higher than 48" on center.

7.    Provide a level floor in the designated accessible shower not exceeding 2% slope in any direction by installing a larger cover over the drain.

8.    Reconfigure the layout of the locker area to provide a compliant 36" wide accessible route between the center benches and the face of the lockers on at least one side.

9.    Provide two (2) accessible lockers.

## ATTACHMENT B:  REMEDIATION IN GUEST ROOMS

A.  Defendants represent that there are currently in the rental program six (6) guest rooms that are in substantial compliance with ADAAG and Title 24 standards ("accessible guest rooms").

B.  Through April 30, 2012, SCA will maintain six (6) accessible guest rooms available for rental to disabled guests.

C.  By April 30, 2012, SCA will have nine (9) accessible guest rooms available for rental to disabled guests, which are distributed across the range of guest room price points.  At least three (3) of these accessible guest rooms will have a roll-in shower.

D.  SCA may achieve the required number of accessible guest rooms set forth in sections B and C above through any combination of the following:

   1.  Accessible guest rooms participating in the Resort's rental program;

   2.  Accessible guest rooms not participating in the Resort's rental program but available for use by disabled guests on an as-needed basis pursuant to contracts between the Resort and the unit owners.

D.  The obligations set forth in section B and C above shall remain in effect until April 30, 2016.

E.  Whenever a guest requests an accessible guest room in a specific room category and such a room is not available, the guest will be provided with a complimentary upgrade to an accessible guest room in a more expensive room category unless all higher-level accessible rooms are occupied.

### ATTACHMENT C

Defendant SCA will establish and enforce the following written policies. Each policy will be instituted within forty-five (45) days of the Effective Date of this Agreement. All employees, employed as of the date the policies are instituted, whose job duties are affected by these policies, will be trained in the policies within thirty (30) days of the policy being established. All employees hired after the date the policies are instituted, whose job duties are affected by these policies, will be trained at the time they are hired.

1.     Parking valets may not park cars so that any part of the car impinges upon an disabled accessible path of travel.

2.     Trash cans and other items will not be placed so as to interfere with disabled access to any emergency phone.

3.     All doors not equipped with mechanical door opening mechanisms will be inspected every six (6) months and adjusted as necessary to maintain them at no more than 5 pounds of push pressure.

4.     Cascades Restaurant: Defendant will place dance floor to ensure an unobstructed 48" path of travel on all sides.

5.     Accessible Guest Rooms: During cleaning between guest reservations, housekeeping staff will arrange furniture to ensure a 36" path of travel throughout each guestroom or suite.

6.     Table service will be provided to disabled persons upon request at the Sweet Potatoes Deli and Ristorante Montagna.

7.     Defendants will post notice and provide complimentary luggage assistance at the main entrance for all disabled persons requesting it.

8.     When a person who identifies him or herself as disabled makes a reservation, employees will inform them of the complimentary luggage assistance.

## ATTACHMENT D



Attachment D-1

## ATTACHMENT E





EXISTING
STONE WALL

INFILL STEPS
AND NEW 6" HIGH
STONE CURB
FLUSH TO EDGE
OF LOWER RISER

NEW ACCESSIBLE AREA

| Wood Associates | | | |
|---|---|---|---|
| Architecture/Accessibility | Title: | Profile-Section | Date: 6/21/10 |
| | Project: | Squaw Creek | Drawing 5 |

## ATTACHMENT F

[Form of Stipulation and Proposed Order as per section 5.2(e)]

1   PAUL L. REIN (Bar No. 43053)
    CELIA MCGUINNESS (Bar No. 159420)
2   LAW OFFICES OF PAUL L. REIN
    200 Lakeside Drive, Suite A
3   Oakland, California 94612
    Telephone:    (510) 832-5001
4   Facsimile:    (510) 823-4787

5   JULIE A. OSTIL (Bar No. 215202)
    LAW OFFICE OF JULIE OSTIL
6   1989 Santa Rita Road, No. A-405
    Pleasanton, California 94566
7   Telephone:    (925) 265-8257
    Facsimile:    (925) 999-9465

8
    Attorneys for Plaintiff MICHAEL PAULICK
9
    JEFFER MANGELS BUTLER & MITCHELL LLP
10  MARTIN H. ORLICK (Bar No. 083908)
    MATTHEW S. KENEFICK (Bar No. 227298)
11  Two Embarcadero Center, Fifth Floor
    San Francisco, California 94111-3824
12  Telephone:    (415) 398-8080
    Facsimile:    (415) 398-5584
13
    Attorneys for Defendants BAVARIAN LION VINEYARD
14  DEVELOPMENT, LLC, DESTINATION HOTELS AND
    RESORTS, LOWE ENTERPRISES, HEIDI SCHNEIDER and
15  SQUAW CREEK ASSOCIATES, LLC

16                  UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18                        (OAKLAND DIVISION)

19
    MICHAEL PAULICK,                    CASE NO.    3:08-cv-04860-CW
20
            Plaintiff,                  STIPULATION OF THE PARTIES
21                                      REGARDING DISMISSAL OF ACTION
        v.                              PURSUANT TO TERMS OF SETTLEMENT
22                                      AND RETENTION OF JURISDICTION BY
    BAVARIAN LION VINEYARD DEVEL-       THE COURT; [PROPOSED] ORDER
23  OPMENT, LLC; DESTINATION HOTELS     THEREON
    AND RESORTS; LOWE ENTERPRISES;
24  RESORT AT SQUAW CREEK; HEIDI
    SCHNEIDER; SQUAW CREEK              Complaint Filed:      October 23, 2008
25  ASSOCIATES, LLC and DOES 1-20,      First Amended
    Inclusive,                          Complaint Filed:      December 10, 2010
26                                      Trial date:           None Set
            Defendants.
27

28          The parties to this action, Plaintiff Michael Paulick and Defendants Bavarian Lion

Error! Unknown document
property name.

1    Vineyard Development, LLC, Destination Hotels and Resorts, Lowe Enterprises, Heidi Schneider

2    and Squaw Creek Associates, LLC, hereby stipulate as follows:

3            This action concerns disabled access claims. The parties have reached a settlement

4    of the claims asserted in this action, including Plaintiff's claims for injunctive relief, statutory

5    damages, and attorney fees, litigation expenses and costs. The parties have memorialized the

6    settlement in a signed Settlement Agreement ("Agreement"), attached hereto as Exhibit A.

7            The parties have redacted from Exhibit A the dollar amounts of the two settlement

8    payments called for in the Agreement -- one for compromise payment in satisfaction of Plaintiffs'

9    claims for damages and the other for compromise payment in satisfaction of Plaintiff's claims for

10   attorneys' fees, litigation expenses and costs. If the court wishes to know the amounts of these

11   settlement payments, the parties will provide that information *in camera*.

12           In the Agreement, in section 8.2, the parties have agreed that any dispute regarding

13   the interpretation, implementation, or enforcement of this Agreement shall be subject to the

14   exclusive jurisdiction of this Court, and Plaintiff and Defendants agree to submit to the exclusive

15   jurisdiction of the Court for these purposes. Section 8.2 further contemplates that the Court shall

16   retain jurisdiction with respect to the interpretation, implementation, and enforcement of this

17   Agreement, whether under General Order 56, or the Court's inherent jurisdiction to administer this

18   Action, until April 30, 2016.

19           The Agreement further provides, in section 5.2(e), that this action shall be dismissed

20   with prejudice, subject to the court's retention of jurisdiction as outlined above.

21           Accordingly, the Parties hereby request that this Court enter an order approving the

22   parties' settlement contained in the Agreement and dismissing the action with prejudice subject to

23   the Court's retention of jurisdiction as set forth in paragraph 3 above.

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
rror! Unknown document
roperty name.

- 1 -

1      IT IS SO STIPULATED.

2    DATED:  April __, 2011          LAW OFFICES OF PAUL L. REIN
3                                    PAUL L. REIN
                                     CELIA McGUINNESS
4

5
                                     By:_____
6                                    Attorneys for Plaintiff MICHAEL PAULICK

7
     DATED:  April __, 2011          JEFFER MANGELS BUTLER & MITCHELL LLP
8                                    MARTIN H. ORLICK
                                     MATTHEW S. KENEFICK
9

10
                                     By: _____
11                                          MARTIN H. ORLICK
                                     Attorneys for Defendants BAVARIAN LION
12                                   VINEYARD DEVELOPMENT, LLC,
                                     DESTINATION HOTELS AND RESORTS, LOWE
13                                   ENTERPRISES, HEIDI SCHNEIDER and SQUAW
                                     CREEK ASSOCIATES, LLC
14

15
                                     [PROPOSED] ORDER
16

17          Pursuant to Federal Rules of Civil Procedure, Rule 26 (c), and by agreement of

18   counsel hereto based on the terms of the above stipulation, **IT IS HEREBY ORDERED AND**

19   **ADJUDGED** that the settlement of the parties set forth in the Agreement is approved and that this

20   action is hereby dismissed with prejudice as to all defendants, subject to the parties' agreement to

21   submit to the exclusive jurisdiction of the Court with respect to disputes regarding the

22   interpretation, implementation, or enforcement of the Agreement and the retention of jurisdiction by

23   this Court until April 30, 2016 for that purpose.

24          **FOR GOOD CAUSE APPEARING, IT IS SO ORDERED:**

25   DATED: April ____, 2011.

26                                   _____
                                              CLAUDIA WILKEN
27                                   JUDGE OF U.S. DISTRICT COURT

28

JMBM | Jeffer Mangels
       Butler & Mitchell LLP